UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CHERYL ENGEL and | ) | |
| L.A. INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 3:06 CV 430 |
| | ) | |
| TOWN OF ROSELAND, | ) | |
| DAVID R. SNYDER in his individual | ) | |
| capacity and in his official capacity as | ) | |
| Vice-President of the Roseland Town | ) | |
| Council and as the Roseland Zoning | ) | |
| Commissioner, and | ) | |
| DOROTHY M. SNYDER, in her | ) | |
| individual capacity and in her official | ) | |
| capacity as President of the | ) | |
| Roseland Town Council, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION and ORDER

This matter is before the court on defendants' joint motion to dismiss the complaint for lack of subject-matter jurisdiction and for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(1) and FED. R. CIV. P. 12(b)(6). In broad terms, the complaint filed to initiate this action alleges that the defendants are attempting to use bogus violations of Roseland's zoning regulations to harass and intimidate plaintiffs in order to enrich the town coffers through fines and the individual defendants by forcing plaintiffs to sell their developed real estate at a fire-sale price. According to plaintiffs,[1] defendants David

---

[1] Many of the factual details discussed in this order concern actions taken by plaintiff Cheryl Engel, or by her husband, Robert Engel. For purposes of discussion, it is not necessary to distinguish between plaintiff Engel or L.A. Industries, Inc., or either of them from non-party Robert Engel. Therefore, the court uses only "plaintiffs" in the interest of simplicity.

Snyder and Dorothy Snyder are a married couple, and both are on the three-member Roseland Town Council. The Snyders reside in a home adjacent to the plaintiffs' real estate. Between the Snyders' residence and plaintiffs' real estate is an undeveloped parcel of real estate, too small to build on, which the Snyders also own. Presumably, if the Snyders bought plaintiffs' property, it could be merged with the small undeveloped lot, almost certainly increasing the value of the whole over the constituent parts giving the Snyders a tidy profit, especially if plaintiffs property were sold at a bargain price. Plaintiffs allege that when they attempted to close the sale of their real estate to a third-party buyer, the transaction fell apart immediately prior to the closing when defendants notified the buyer of the bogus zoning violations and related fines.

The complaint contains nine counts, the first four of which are brought pursuant to 42 U.S.C. § 1983. Again painting the allegations using a broad brush, Count 1 alleges that defendants' actions violated plaintiffs' rights to procedural due process under the 14th Amendment of the United States Constitution, depriving them of a property interest, the lost sale proceeds of their failed real estate transaction. Count 2, like Count 1, alleges a violation of plaintiffs' rights to procedural due process under the 14th Amendment of the United States Constitution depriving them of the proceeds from the sale of their real estate transaction, but the focus of this count is on defendants' motive rather than their methods: plaintiffs allege that defendants' ulterior motive to acquire the real estate themselves at a bargain price makes the zoning procedures used an abuse of process. Count 3 alleges that the defendants' actions violate the 8th Amendment

2

prohibition of excessive fines, thereby violating plaintiffs' rights to substantive due process under the 14th Amendment of the United States Constitution. Count 4 alleges that defendants' conduct was so egregious and outrageous as to be a violation of plaintiffs' rights to substantive due process under the 14th Amendment.[2]

Count 6 of the complaint alleges that defendants' actions are racketeering in violation of federal law, 18 U.S.C. § 1962(c). The remaining three counts of the complaint plead state-law violations. Count 7 alleges that defendants actions amount to the tort of abuse of process under Indiana law. Count 8 alleges that defendants actions which caused plaintiffs' real estate sale to fall through constitute tortious interference with contract. Finally, Count 9 alleges that defendants actions are racketeering in violation of Indiana's "little RICO" act, Ind. Code § 35-45-6-1 *et seq*.

**Counts 1-4**

Defendants' motion to dismiss the complaint does not address the first four counts of the complaint individually but instead as a group. Defendants cite *Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1018 (8th Cir. 2000), as authority for the proposition that when a "plaintiff alleges civil rights violations pursuant to 42 U.S.C. § 1983 based upon a deprivation of due process of law and the plaintiff has failed to exhaust all state remedies available to the plaintiff, the plaintiff's claims are not yet ripe for adjudication and dismissal pursuant to Rule 12(b)(1) is warranted." Defendants'

---

[2] Count 5 of the complaint requests an award of attorney's fees on the first four counts, pursuant to 42 U.S.C. § 1988.

Motion to Dismiss at 3. Thus, defendants argue that because plaintiffs have not yet completed the zoning appeals process, the first four counts of the complaint must be dismissed for lack of subject-matter jurisdiction. Two things can be said about this argument immediately.

First, although *Wax 'n Works* relied largely on a Seventh Circuit case, *New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474 (7th Cir.1990), as authority for the exhaustion requirement, *New Burnham Prairie Homes* never mentions subject-matter jurisdiction. Defendants' argument that plaintiffs' failure to exhaust deprives this court of subject matter-jurisdiction comes entirely from the 8th Circuit's view that because the case on appeal had been dismissed below because of a failure to exhaust, the trial court's RULE 12(b)(6) "dismissal could more properly have been made pursuant to FED. R. CIV. P. 12(b)(1) because the case is not ripe for adjudication." *Wax 'n Works*, 213 F.3d at 1020.

While this court agrees that ripeness has traditionally been understood as an aspect of the justiciability of the case, implicating subject-matter jurisdiction, that no longer appears true, at least as far as exhaustion is concerned. Considering a similar argument concerning exhaustion under the Individuals with Disabilities Education Act, the Court of Appeals in this circuit pointedly noted the Supreme Court's advice that "'[c]larity would be facilitated . . . if courts and litigants used the label "jurisdictional" not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a

4

court's adjudicatory authority.'" *Mosely v. Board of Educ. of City of Chicago*, 434 F.3d 527, 532-33 (7th Cir. 2006) (quoting *Eberhart v. United States*, 546 U.S. 12 (2005) (internal quotations and citations omitted).

The distinction between subparts (1) and (6) of RULE 12(b), that is, between dismissal for lack of subject-matter jurisdiction and dismissal for failure to state a claim, is important. Under RULE 12(b)(1), the party asserting that jurisdiction exists—here, plaintiffs—has the burden of proof. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). Under the "broad standard" applicable to RULE 12(b)(6), however, the defendants must persuade the court that plaintiff could prove no set of facts consistent with the allegations of the complaint entitling plaintiff to relief. *Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir. 1992). The practical effect of this distinction, when coupled with the fact that exhaustion is an affirmative defense on which defendants bear the burden of proof, will be considered further below.

As to the second thing that can be immediately said about defendants' failure-to-exhaust argument, it is unnecessary to say quite so much, because the immediate consequences can be stated succinctly. Defendants argue that all four of plaintiffs' due-process counts must be dismissed for failure to exhaust state remedies. But two of plaintiffs' counts (counts 3 and 4) plead a violation of substantive due process rights, and failure-to-exhaust is a defense only to procedural due-process deprivations. *Kauth v. Hartford Ins. Co. of Illinois*, 852 F.2d 951, 958 (7th Cir. 1988) ("[I]f substantive constitutional rights are violated, the constitutionally recognized deprivation is

5

complete at the time of the action, irrespective of the procedures available before or after the deprivation." (internal quotations omitted)); *see also Snyder v. Nolen*, 380 F.3d 279, 298 (7th Cir. 2004); *Terry v. Richardson*, 346 F.3d 781, 787 (7th Cir. 2003) ("That leaves John's substantive due process claim. John may maintain this claim despite receiving all the process to which he was entitled[.]")[3]

Because failure-to-exhaust is a defense to procedural due-process deprivations only, defendants' argument for dismissal has no bearing on plaintiffs' substantive due process counts. Counts 3 and 4 will not be dismissed, and the court need not consider them further in this order.

This leaves for consideration defendants' argument that plaintiffs two procedural due-process counts must be dismissed because plaintiffs have failed to exhaust state remedies. As plaintiffs point out, exhaustion is an affirmative defense on which defendants bear the burden of proof, and so normally is not even appropriately considered on a motion under Rule 12(b)(6). *Mosely*, 434 F.3d at 533. A complaint can be

---

[3] This is because the exhaustion requirement, established in *Parratt v. Taylor*, 451 U.S. 527, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), is limited to the area of procedural due process. *Snyder*, 380 F.3d at 298-99 n. 2 (Ripple, J. dissenting). It bears noting now that plaintiffs believe that defendants have failed to make any argument based on *Paratt*, Plaintiffs' Response in Opposition at 7 n. 2, which obviously is completely incorrect given that *New Burnham Prairie Homes* is based on *Paratt*. *New Burnham Prairie Homes*, 910 F.2d at 1480. Considering plaintiffs' mistake and defendants' failure to appreciate the inapplicability of *Paratt* to substantive due process claims, the parties are advised to heed well the admonishment that "[i]n a confused area of the law like due process, courts and counsel alike must strive for the utmost clarity of language and precision of thought." *Strasburger v. Board of Educ., Hardin County Community Unit School Dist. No. 1*, 143 F.3d 351, 358 n. 2 (7th Cir. 1998).

dismissed under *Rule* 12(b)(6) for failure to exhaust only when a plaintiff pleads him- or herself out of court by including facts in the complaint that establish the affirmative defense. *Walker v. Thompson,* 288 F.3d 1005, 1009-1010 (7th Cir. 2002); *see also Tregenza v. Great American Communications Co.,* 12 F.3d 717, 718 (7th Cir. 1993) (if plaintiff "pleads facts that show that his suit is time-barred or otherwise without merit, he has pleaded himself out of court.").

Defendants argue that plaintiffs have pleaded themselves out of court in this case, by alleging in their complaint "that they have initiated an appeal of their zoning violation citations under the Roseland Town Code but that these appeals have not yet been concluded." Defendants' Motion to Dismiss at 4. Alternatively, defendants argue that plaintiffs have failed to allege that they have taken advantage of the statutory process for de novo review in the state courts or that such review would provide an inadequate remedy. As a final alternative, raised for the first time in their reply brief, defendants argue that "even if the plaintiffs are correct that no such appeal lies with the Roseland Town Council . . . they cannot escape the fact that they . . . wholly fail to allege that any appeal was ever taken to any board of zoning appeal" as they are entitled to do under Indiana law. Defendants' Reply at 6.[4]

---

[4] The court cannot let this pass without noting that defendants claim they are arguing in reply to plaintiffs' "suggest[ion] that our assertion that Plaintiffs are entitled to maintain an appeal to the Roseland Town Council pursuant to I.C. § 36-7-4-1005 is incorrect since that provision applies only to a board of zoning appeals [BZA] and the Roseland Town Council is not one of those bodies." Defendants' Reply at 6. Defendants then argue that Roseland has vested certain BZA powers in the Town Council under

(continued...)

7

These latter two alternative arguments both fail to appreciate that exhaustion is an affirmative defense, and so plaintiffs have no burden to allege that they have taken advantage of available appellate processes or that those processes are inadequate to provide a remedy: plaintiffs have "no obligation to allege facts negating an affirmative defense" in their complaint. *Mosely*, 434 F.3d at 533. Thus, defendants' alternative arguments need not be considered.[5] The only issue is whether, construing the

---

[4](...continued)
Indiana home rule provisions.

This is way off-base. First, defendants' motion to dismiss does not argue that Ind. Code § 36-7-4-1005 gave plaintiffs an appeal to the Town Council: in fact, defendants didn't cite that provision at all. They mentioned only § 1003 of Title 36, Article 7, Chapter 4, and, although these sections are all related, defendants argued only that plaintiffs have a right of de novo review in the Indiana courts. Thus, plaintiffs made no suggestion that § 1005 applies only to an appeal to a BZA, their argument is that the chapter provides for de novo judicial review from final decisions made by a BZA. Last, defendants have provided no evidentiary support for their assertion that Roseland has granted BZA powers to the Town Council, and even if they had, it would be fodder for a motion for summary judgment, not a RULE 12(b)(6) motion. The court has taken the time to point all this out in this footnote because as this litigation proceeds, patience for half-baked arguments like this will run out quickly.

[5] If it were completely clear that de novo judicial review is an adequate state process to provide relief to plaintiffs, dismissal might be proper. A number of questions spring to mind immediately, however. For example, de novo judicial review is available to persons "aggrieved by a decision of the board of zoning appeals or the legislative body." Ind. Code § 36-7-4-1003. On its face, this sounds like review of zoning decisions such as granting/denying a variance, not, as here, of citations issued for violations of zoning regulations, and plaintiffs do argue that judicial review is irrelevant in this case for that reason, for the reason that there have been no decisions by any board of zoning appeals–a body which the Roseland Town Code authorizes, but which does not exist. Also, plaintiffs claim monetary damages from the allegedly bogus zoning citations interfering with the closing of the sale of their real estate. Would judicial review be able to provide that remedy? Questions such as these require more substantial development of defendants' arguments than is made in their RULE 12(b)(6) motion.

8

allegations of the complaint most favorably to plaintiffs and drawing all reasonable inferences consistent therewith in their favor, the complaint establishes that a failure to exhaust administrative remedies shows that plaintiffs have no procedural due process claim because adequate process is still available to them.

The sum and substance of the argument made in defendants' motion to dismiss on this point is that the complaint shows on its face a failure to exhaust because "Plaintiffs here have alleged that they have initiated an appeal of their zoning violation citations under the Roseland Town Code but that these appeals have not yet been concluded." Defendants' Motion to Dismiss at 4. In response to this argument, plaintiffs explain that in their complaint they placed the word "appeal" in quotation marks because the first time that they were "even given notice of over $98,000 in fines that had supposedly been accumulating for over a year" was at a hearing before the Roseland Town Council concerning a lesser amount of fines—the hearing which defendants characterize as the "appeal," Plaintiffs' Response in Opposition at 8—and that, in any event, Roseland did not even have an appeal process. According to plaintiffs, the Roseland ordinance establishing the appeals process did not even take effect until August 10, 2006, one month after they filed the complaint initiating the present action, and was enacted in response to this action. Id.

Explaining plaintiffs' position a bit further , their complaint alleges (paragraphs 61-77) that after they—and their potential buyer—were notified immediately prior to the closing of the sale of their real estate of five outstanding citations for zoning

9

ordinance violations totaling $33,850.00 in fines, plaintiffs then learned[6] that they could appeal the citations to the Roseland Town Council on June 1, 2006. That date was changed to June 8, 2006, when the town attorney was not present at the council meeting on June 1. At the council meeting on June 8, plaintiffs were informed that the correct amount of the fines–with additional citations involved—was $98,400, and that the new fines had to be addressed or the appeal would be forfeited. Nevertheless, after plaintiffs requested additional time to review the new charges, the hearing/council meeting was continued to June 22, 2006. When plaintiffs appeared on that date, the word "CANCELLED" was written on the agenda sheet taped to the door of Roseland's town hall, and no new date has been set for the hearing.

In addition, plaintiffs explain that at the time of the "appeal" described in their complaint, there weren't even any appeal provisions in the Roseland Town Code. They have attached to their response to the motion to dismiss a copy of what they purport to be (defendants have not objected to the authenticity of the document) Roseland Ordinance 272-06, titled "Roseland Appeals Procedures and Rules Ordinance," which specifies an effective date of August 10, 2006. One of the "whereas" terms stating the rationale for the ordinance is: "WHEREAS, the Town Code of Roseland currently has no clearly defined set of procedures and rules to regulate the conduct of appeals before the Town Council of the Town of Roseland[.]" Plaintiffs' Response in Opposition, ex. A.

---

[6] The complaint is vague as to who plaintiffs learned this from. It appears that it may have been from their real estate listing agent who, attempting to close the sale, had spoken to "someone on behalf of the Town of Roseland." Complaint ¶ 61.

10

The standard for surviving a Rule 12(b)(6) motion is so broad that it even allows plaintiffs to provide new, unsubstantiated, versions of events on appeal, as long as they not inconsistent with the allegations of the complaint. *See Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir. 1992). In light of this broad standard, and understanding plaintiffs' references to their "appeal" as fleshed out by this additional, consistent explanation, the court agrees that plaintiffs have not pleaded themselves out of court by alleging facts that establish that they have failed to exhaust administrative remedies. This does not mean that defendants do not have a valid exhaustion defense: it means only that the issue cannot be decided now under the proper standard for RULE 12(b)(6). Resolution of that defense will require additional briefing and supporting evidence. For now, defendants' motion to dismiss plaintiffs' due process claims for failure to exhaust remedies will be denied.

**Counts 6 and 9**

Counts 6 and 9 of the complaint plead that defendants violated provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), specifically 18 U.S.C. § 1962(c), and of Indiana's "little RICO" act, specifically Ind. Code § 35-45-6-2, through an attempt to extort money from the plaintiffs. That is, the complaint alleges that defendants have demanded money from the plaintiffs, but plaintiffs have not yet parted with any of that money. Defendants argue that plaintiffs' federal RICO claim must be dismissed because in *Scheidler v. NOW, Inc.*, 537 U.S. 393 (2003) the Court significantly narrowed RICO claims based upon a predicate act of extortion by holding that "the

11

crime of extortion requires that the defendant 'obtain property,' not merely demand it." Defendants' Motion to Dismiss at 5. Defendants argue that logical extension of the holding requires dismissal of the state-law RICO claim, as well. *See DirecTv v. Edwards*, 293 F. Supp. 2d 873, 879 (N.D. Ind. 2003) (state version of RICO tracks federal version, and Supreme Court precedent provides useful guidance.)

      The court agrees with plaintiffs that defendants have completely misconstrued *Scheidler*. While the court could explain at length why defendants are wrong, it will attempt to do so in only a few sentences. The RICO provision in question, § 1962(c), prohibits the conduct of an enterprise's affairs through a pattern of "racketeering activity." The phrase "racketeering activity" is defined by § 1961(B) to include *any* act indictable under 18 U.S.C. § 1951, which is the federal extortion statute commonly called the Hobbs Act. The Hobbs Act prohibits impacting interstate commerce "by robbery or extortion or *attempts* . . . so to do[.]" 18 U.S.C. § 1951(a) (emphasis added). Nevertheless, defendants argue that in *Scheidler* the Court excised attempted extortion from this statutory scheme.

      In *Scheidler*, the plaintiffs' Hobbs Act theory was that the extortion was directed at intangible rights: the right of women to obtain services from medical clinics, of physicians to practice their profession by providing medical services, and of the clinics to provide medical services and otherwise conduct their businesses. 537 U.S. at 399. Obviously, intangible rights such as these cannot be "obtained" by an extortionist, but the Court of Appeals for the Seventh Circuit had held that "an extortionist can violate

12

the Hobbs Act without either seeking or receiving money or anything else. A loss to, or interference with the rights of, the victim is all that is required." *Id*. at 400 (internal quotation marks and citations omitted). The Court disagreed, finding that the Court of Appeals had eliminated the extortion requirement that property be "obtained" from another, explaining:

> Petitioners may have deprived or sought to deprive respondents of their alleged property right of exclusive control of their business assets, but they did not acquire any such property. Petitioners neither pursued nor received "something of value from" respondents that they could exercise, transfer, or sell.

*Id*. at 405. The Court then stated its holding as follows: "Because we find that petitioners did not obtain *or attempt to* obtain property from respondents, we conclude that there was no basis upon which to find that they committed extortion under the Hobbs Act." *Id*. at 409 (emphasis added).

Because the holding itself in *Scheidler* explicitly includes the term attempt, and the present case involves money, a tangible asset that can be obtained from another person, little more needs to be said in the way of explaining how defendants misinterpret *Scheidler* and why their motion to dismiss the federal and state RICO claim will be denied. The court will only add that none of the lower court cases which defendants cite—in violation of rules against citing unpublished opinions,[7] and several of which are district court decisions mischaracterized as Seventh Circuit decisions—as

---

[7] FED. R. APP. P. 32.1, which became effective December 1, 2006, provides that unpublished decisions issued on or after January 1, 2007, may be cited.

support for their interpretation of *Scheidler*, in fact do so. The only case which even comes close is *Brutyn, N.V. v. Anthony Gagliano Co., Inc.*, 2005 WL 3811423 (E.D. Wis. Nov. 29, 2005). In *Brutyn*, the court expressed the thought that attempted extortion might not be enough under RICO, because with an unsuccessful attempt there is no injury "by reason of" the Hobbs Act violation, as required by 18 U.S.C. § 1964(c). *Id*.

However, rather than discussing the issue at length, the *Brutyn* court noted that it "need not spend much time on Brutyn's alleged Hobbs Act violations. This is because, even if Gagliano violated the Hobbs Act on these two occasions, these two acts alone do not constitute a 'pattern of racketeering activity,' as a matter of law." *Id*. Thus, *Brutyn*'s analysis is superficial, and to the extent, if any, that it does support defendants' interpretation of *Scheidler*, this court respectfully disagrees. Plaintiffs' federal and state RICO claims will not be dismissed based on the theory that attempted extortion is not a predicate act after *Scheidler*.[8]

---

[8] Although defendants mainly focus on *Scheidler*, they also seem to suggest that the RICO claims in the complaint should be dismissed because they do not specify a Hobbs Act violation as the predicate act, in violation of a heightened pleading requirement applicable to RICO claims. *See Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006) (in order to give defendant fair notice plaintiff must allege each element of claim). Because defendants understood the complaint to plead extortion violating the Hobbs Act, and plaintiffs have confirmed this reading, the complaint will not be dismissed for this pleading shortcoming, which is difficult to harmonize with other precedent. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993) (rejecting heightened pleading requirement for municipal liability under § 1983, because liberal notice pleading under FED. R. CIV. P. 8(a)(2) governs unless *Rule* 9(b) specifies otherwise.

14

As to the state RICO claim, defendants press an additional argument for dismissal. Paragraph 148 of plaintiffs' complaint pleads as a predicate act that defendants committed the crime of "official misconduct" in violation of Ind. Code § 35-44-1-2. Defendants argue that in *State v. Dugan*, 793 N.E.2d 1034 (Ind. 2003), the Indiana Supreme Court held that a required element of a charge of official misconduct is that the conduct be an "independent criminal act," Defendants' Motion to Dismiss at 8, and the complaint in the present case pleads only that defendants assessed zoning violations as part of their official duties, conduct which is not independently unlawful.

The court is not exactly sure what defendants mean by "independently unlawful," and where they find that requirement in *Dugan*: the phrase does not appear in the case. Instead, and the portion of the case that defendants quote, *Dugan* states: "A charge for misconduct must rest upon criminal behavior that is related to the performance of official duties." *Id*. at 1039. It appears to the court that defendants are arguing that when the official misconduct alleged is an act calling for the exercise of official discretion, that conduct cannot be charged as official misconduct: "[Plaintiffs'] Complaint merely disputes defendants' actions; it does not allege that they are independently criminal. If this interpretation of the law were correct, then every citizen aggrieved by a decision of a state or local official could launch a civil RICO action against them[.]" Defendants' Motion to Dismiss at 8.

The official misconduct statute states in part that a violation occurs when a public servant "performs an act the public servant is not authorized by law to perform,

15

with intent to obtain any property for himself or herself[.]" Ind. Code § 35-44-1-2(2). The Indiana Attorney General recently opined that a county clerk who issued marriage licenses to couples not authorized by statute to obtain them would commit official misconduct in violation of the statute. The Hon. Kathy Richardson, 2004 Ind. OAG No. 4, 2004 WL 1876176 (April 29, 2004). On the limited argument and briefing of the law provided by defendants at this point, the court thinks it can be presumed that, should plaintiffs be able to prove, as is alleged in their complaint, attempted extortion via zoning citations issued based on non-existent zoning regulations for the purposes of defendants' private pecuniary gain, that would constitute official misconduct. This might be the case even if those acts did not amount to the independent state crimes of conversion and intimidation, which plaintiffs have argued in their response are the "independent criminal acts" defendants believe are necessary. The state RICO claim will not be dismissed.

**Counts 7 and 8**

These are plaintiffs' state-law claims for the tort of abuse of process and tortious interference with contract. Defendants argue that both of these claims must be dismissed because plaintiffs did not give the notice of tort claim required by Ind. Code § 34-13-3-13. Plaintiffs concede that their claim for abuse of process is premature for this reason, and should be dismissed without prejudice. As to the claim for tortious interference with contract, however, plaintiffs argue that dismissal is improper because

the claim is pleaded against defendants David and Dorothy Snyder in their individual capacities.[9]

In reply, defendants argue that Ind. Code § 34-13-3-5 prohibits naming them personally in a civil suit for actions they took as members of a governmental body. Defendants admit that the statute contains exceptions, but they do not discuss whether any apply. One exception allows a personal-capacity suit when the complaint alleges that the action taken was criminal. Ind. Code § 34-13-3-5(c)(1). The complaint in this case does so. Plaintiffs' tortious interference claim against the Snyders in their individual capacities will not be dismissed.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss (DE # 10) is **GRANTED IN PART and DENIED IN PART**. Count 7 is **DISMISSED WITHOUT PREJUDICE**. Count 8, but only to the extent that it pleads an official capacity claim against the Snyder defendants or a claim against the Town of Roseland, is **DISMISSED WITHOUT PREJUDICE**. Otherwise, the complaint stands.

**SO ORDERED.**

Enter: December 5, 2006

                            s/James T. Moody_____
                            JUDGE JAMES T. MOODY
                            UNITED STATES DISTRICT COURT

---

[9] Actually, plaintiffs also assert that their state-law RICO claim should not be dismissed for this reason as well. The court does not address this contention because defendants did not make the argument that the tort-claim notice requirement applies to claims under Indiana's RICO statute.